UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH FIZER,

        Plaintiff,                      No.  15-cv-13311

vs.

CITY OF BURTON, et al.,

        Defendants.
_____/

OPINION AND ORDER DISMISSING
CASE ON *RES JUDICATA* GROUNDS

      At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on November 18, 2016

      PRESENT:   Honorable Gerald E. Rosen
                           United States District Chief Judge

On September 18, 2015, Plaintiff Kenneth Fizer, through counsel, filed the instant Section 1983 police excessive force action against the City of Burton, Michigan, Mt. Morris Township, Michigan, and several individual Burton and Mt. Morris police officers, and Michigan State Troopers arising out of Plaintiff's stop, arrest and flight from arresting officers on December 23, 2012.  This is the third such Complaint filed by Plaintiff arising out of these same events.

I.  PROCEDURAL BACKGROUND

On December 3, 2013, Plaintiff Kenneth Fizer, acting *pro se*, filed a Complaint in

1

this Court against the Burton Police Department, the Mt. Morris Police Department, two individual Burton and Mt. Morris police officers -- Jim Broughton and Jeff Iski -- and a Michigan State Trooper, Jason Sack (all of whom are also named as defendants in the instant action), alleging that his constitutional rights were violated when he was arrested and taken into custody on December 23, 2012. *See Fizer v. Broughton, et al.,* E.D. Mich. No. 13-14928 ("*Fizer I*"). On May 15, 2014, the Court dismissed that complaint, without prejudice, for failure to pay the requisite filing fee or establish indigency so as to entitle Plaintiff to proceed *in forma pauperis*.

Meanwhile, on January 3, 2014, Fizer filed another *pro se* Complaint, this time in State Court, against the Burton Police Department and against a non-governmental defendant, Smitty's Towing. Defendants removed the case to this Court on February 20, 2014. *See Fizer v. Burton Police Department*, *et al.*, E.D. Mich. No. 14-10786 ("*Fizer II*"). This second Complaint, challenging the seizure of Plaintiff's automobile, also arose out of Plaintiff's stop, arrest, and flight from arresting officers on December 23, 2012. Plaintiff alleged in this second Complaint that in seizing his automobile after he was arrested, the Burton Police violated his constitutional rights to Due Process.

In lieu of answering the Complaint, Defendant moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and/or 56(c). On June 16, 2014, the Court granted Defendant's motion and dismissed the case against the Burton Police Department, with prejudice. (Smitty's Towing was dismissed without prejudice for lack of prosecution.)

2

Significantly, the police record of the events of December 23, 2012, filed with the Court as part of the State Court records with Defendant Burton Police Department's Notice of Removal and later appended to Defendant's motion to dismiss or for summary judgment, were relied upon by the Court in dismissing the case. *See id.,* Dkt. # 2, 7.

Citing the police record, the Court summarized some of the pertinent facts in its Opinion and Order of June 16, 2014:

> Plaintiff Kenneth Alan Fizer, a felony parolee,[1] was arrested on December 23, 2012 on charges of flight to evade prosecution - fleeing/eluding and resisting an officer arising out of a larceny at a Walmart store on East Court Street in Burton, Michigan, allegedly committed by Fizer's companion, Terry Clements. According to the police report of the arrest, Clements stole several bottles of liquor from the Walmart store then fled the business without paying in a black 2002 Buick Regal driven by Fizer. The Burton Police were alerted. . . .

[*Fizer v. Burton Police Department*, *et al.*, E.D. Mich. No. 14-10786, 6/16/14 Opinion and Order, Dkt. # 7, Pg. ID 73.]

The Police Reports detailed the ensuing police pursuit, Fizer's stop and ultimate arrest:

TRAFFIC PURSUIT

At the time [Burton Police] Officer Broughton was traveling east hound on Court St. east of Genesee Rd. and observed a black Buick Regal

---

[1] Fizer told officers at the time of his arrest that he had just been released from prison four months earlier and was on parole for robbing a bank. The Michigan Offender Tracking Information System (OTIS) confirms this and shows that Fizer was paroled from a 2005 sentence for a bank robbery he committed in November 2004. *See* Offender Tracking Information System (OTIS) at http://mdocweb.state.mi.us/otis2/.

occupied by a black male driver and black male passenger traveling west bound matching the description given by dispatch. Officer Broughton position[ed the] patrol vehicle behind the Buick Regal in an attempt to initiate[] a traffic stop. Officer Broughton in a fully marked police cruiser activated overhead lights and siren at which time the vehicle disregarded to stop. Dispatch was notified of the vehicle bearing M[ichigan] R[egistration] CMK2425 failing to stop.

  Officer Broughton continued to pursue the vehicle w[est] b[ound] on Court St. which time the vehicle disregarded a solid red light at Center Rd. and continued n[orth]b[ound] on Center. The vehicle continued w[est] b[ound] on Richfield Rd. disregarding [a] solid red light at Western Rd. onto N[orth] b[ound] Dort Hwy.

  As the vehicle continued w[est] b[ound] on Boluvard, north on James P Cole to w[est] b[ound] Stewart Ave., State Police Trooper Mercier was able to place stop sticks in the path of the suspect's vehicle on Stewart Ave. eventually deflating both driver side tires. The vehicle continued to flee approximately ½ mile more onto Maines St. when Trooper[s] Carberry and Saks were able to perform a P.1.T. maneuver forcing the vehicle to come to rest in the street.

  While several marked patrol vehicles with lights and siren's activated assisting at different intersections and pursuing the vehicle, the vehicle failed to stop and attempted to strike patrol vehicles. During the pursuit several agencies had joined the pursuit including [Burton Police] Officer Nelson Lakey, State Police Troopers Carberry, Saks, Mercier and Berdan. Also assisted was Mount Morris Twp K-9 Officer Jeff Iskey [sic].

APPREHENSION

  As the vehicle came to rest in the middle of the street Officer Broughton observed the driver to be a b[lack] m[ale], approximately 6'10" tall wearing a brown jacket exit the vehicle along with a b[lack] m[ale] passenger wearing a black jacket both b[lack] m[ale] suspects fled west behind 4313 Maines St. Officers identified themselves and instructed the suspects to stop, [but] the suspects continued to flee towards the rear of the residence.

  K-9 Officer Iskey [sic] gave pursuit with his K-9 along with several

> other Officers at which time both suspects had to be forcibly taken into custody. Both suspects refused several loud verbal commands to place their hands behind their back and to show their hands. The suspects continued to force their hands underneath their body pulling away from Officers. After a brief struggle the suspects were placed into custody and secured in rear of [separate] patrol vehicles.

[*Id.*, Notice of Removal, State Court Records, Summary Disposition Motion Ex. B, Police Record, Dkt. # 1, Pg. ID 23-24 (spelling and punctuation corrected).]

Disregarding the Court's dismissal of his 2014 complaint, with prejudice, on September 18, 2015, Plaintiff Fizer, through counsel, filed yet a third Complaint ("*Fizer III*") arising out the events of December 23, 2012, naming as party-defendants all of the individual police officers and municipalities involved in his stop, arrest and flight from the authorities. In this Complaint, Plaintiff alleges a Section 1983 claim for violation of his constitutional rights under the Fourth Amendment.

After reviewing Fizer's Complaint and the record of the previous cases filed by Fizer and litigated in this Court, it appeared to the Court that *Fizer III* might be barred pursuant to the doctrine of *res judicata* or claim preclusion. Therefore, on October 29, 2015, the Court entered an Order to Show Cause, directing the parties to show cause in writing why the case should not be dismissed, with prejudice. All parties have responded to the Show Cause Order.

## II. DISCUSSION

It is well-settled that "[u]nder the doctrine of claim preclusion [a/k/a *res judicata*], a final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were *or could have been* raised in that action." *Heike v. Central Michigan University Board of Trustees,* 573 F. App'x 476, 480 (6th Cir. 2014) (quoting *Rivet v. Regions Bank of La.* 522 U.S. 470, 476 (1998) (emphasis added)). Claim preclusion applies when (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions. *Id.* (citing *Sanders Confectionary Prods., Inc. v. Heller Fin. Inc.,* 973 F.2d 474, 480 (6th Cir. 1992)).[2] Under Michigan law, the doctrine is applied broadly, barring claims that have been already litigated as well as claims "arising from the same transaction that the parties, exercising reasonable diligence, could have raised [in the prior action] but did not." *Adair v. State of Michigan*, 470 Mich. 105, 121, 680 N.W.2d 386 (2004).

The Court finds that the elements of *res judicata* are met here.

First, the parties are in agreement that there was a final decision on the merits in *Fizer II*, as it was dismissed with prejudice. Thus for purposes of *res judicata*, the first element is satisfied. *Pedreira v. Sunrise Children's Servs.,*, 802 F.3d 865, 870 (6th Cir.

---

[2] Claim preclusion is distinct from issue preclusion (collateral estoppel). "This latter doctrine only precludes relitigation of issues of fact or law actually decided in a prior action between the same parties and necessary to the judgment even if decided as part of a different claim or cause of action." *Sanders*, 973 F.2d at 480.

2015) (quoting *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2002)) ("A dismissal with prejudice 'operates as a final adjudication on the merits and has a res judicata effect.'")

Second, it cannot be disputed that Plaintiff could have brought his Fourth Amendment excessive force claim in *Fizer II*. Indeed, its resolution was required under straightforward operation of Michigan's compulsory joinder rule in M.C.R. 2.203(A).[3]

M.C.R. 2.203(A) provides:

> **(A) Compulsory Joinder**. In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require the presence of third parties over whom the court cannot acquire jurisdiction.

Under the plain language of the court rule, Plaintiff's excessive force claim arose out of the same transaction or occurrence as the seizure of his automobile -- namely his felony arrest on December 23, 2012. Those claims, moreover, would not have required any third parties over whom the state court could not acquire jurisdiction as it cannot be disputed that the state court would have had personal jurisdiction over any law enforcement officer involved in Plaintiff's apprehension and arrest. Therefore, the third element of *res judicata* is met.

---

[3] The Michigan court rule would have applied here as *Fizer II* was originally brought in Michigan state court. *See Hendrix v. Roscommon Twp.*, 2004 WL 1197359 at *4 (May 18, 2004).

Plaintiff argues, however, that the doctrine does not apply because none of the parties in the instant lawsuit (except for Plaintiff) were parties in *Fizer II*. In making this argument, however, Plaintiff ignores that the doctrine applies if "the second action involves the same parties *or their privies* as the first." *Heike* at 480; *Butler v. FCA U.S. LLC*, 2015 WL 4756743 at *3 (E.D. Mich. Aug. 11, 2015). "Privity," for the purpose of *res judicata*, exists if a party is "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State of Michigan*, *supra*; *Butler*, *supra*. "A mutuality of interest, including an identity of desired result, creates privity between parties for res judicata purposes." *ABS Indus., Inc. ex rel ABS Litigation Trust v. Fifth Third Bank*, 333 F. App'x 994 (6th Cir. 2009).

Here, Defendants and the Burton Police Department (the named municipal defendant in *Fizer II*) are in privity. Plaintiff fails to take into consideration the relationship between Defendants and the Burton Police Department. Under Michigan law, a municipal police department is a creature of the municipality and as such, it cannot be sued independently. *See* M.C.L. § 92.1. The Sixth Circuit has held that "[a] suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994) (citing *Moomey v. City of Holland* 490 F. Supp. 188, 190 (W.D. Mich. 1980). Therefore, although the Burton Police Department was the named defendant in the *Fizer II*, the real party in interest was the City of Burton,

8

one of the named defendants in the instant action.

Moreover, "it is well-settled that a principal-agent relationship satisfies the privity requirement where the claims alleged are within the scope of the agency." *ABS Indus.*, 333 F. App'x at 999. The claims in the instant action against Defendants Broughton and Lakey arise from the officers' employment with the Burton Police Department. The employer-employee relationship between these parties is, therefore, sufficient to establish privity.

But an employer-employee relationship is not the only basis for finding privity among the parties. The Burton Defendants, as well as all of the other municipal and State Defendants sued in the instant action stand in privity with the Burton Police Department because of their substantial identity of interests.

As explained by the Michigan Supreme Court in finding that the doctrine of *res judicata* applied in *Adair*,

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The other limit of the doctrine traditionally requires both a "substantial identity of interests" and a "working functional relationship" in which the interests of the non party are presented and protected by the party in the litigation. . . . [Thus,] a perfect identity of the parties is not required, only a "substantial identity of interests" that are adequately presented and protected by the first litigant.

470 Mich. at 122-23 (citations and some internal punctuation omitted). *See also Richards v. Jefferson County*, 517 U.S. 793, 799, 116 S.Ct. 1761 (1996) ("[T]he term "privity" is now used to describe various relationships between litigants that would

9

not have come within the traditional definition of that term. . . . We have recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." (citations and internal punctuation omitted)).

*Adair* is exemplary of such an interest-related relationship establishing privity among the parties. In that case, a group of voters filed a lawsuit challenging a portion of the Headlee Amendment. After that case was decided on the merits, a second distinct group of voters filed a similar lawsuit, but this time challenging a different part of the Headlee Amendment. Despite the facts that different individual voters were party-plaintiffs in the two cases and the objects of the two suits, while related, were not identical, the Supreme Court determined that privity existed between the two groups of plaintiffs because both were pursuing substantially the same interests. *Id.*

The same is true here: With respect to Plaintiff's allegations against the Burton Police Department in *Fizer II* and against the municipal and State law enforcement defendants in the present action, there is a substantial identity of interest and a working functional relationship such that they stand in privity with one another.

Finally, there is an identity of claims between the first and second actions. Michigan uses a transactional test pursuant to which "the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Adair* at 124. Courts take a pragmatic approach

and consider "whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit." *Id.* at 125. Therefore, even if a plaintiff alleges distinct causes of action or different legal theories, they must be brought in the same suit if they are based on a "common nucleus of operative facts." *Nguyen ex rel United States v. City of Cleveland*, 534 F. App'x 445, 451 (6th Cir. 2013) (citing *Mich. Bell Tel. Co. v. MCI Metro Access Transmission Servs., Inc.*, 323 F.3d 348, 362 (6th Cir. 2003) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

In *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812 (6th Cir. 2010) and *Dubuc v. Green Oak Twp.*, 312 F.3d 736 (6th Cir. 2002), the Sixth Circuit upheld the application of the doctrine of *res judicata* to prevent the litigation of claims in the federal district courts that should have been brought in prior state court actions. In each of those cases, the plaintiffs filed a lawsuit in state court, which was dismissed, and then filed lawsuits in federal court alleging claims that, while presenting distinct theories of recovery, occurred during the pendency of the earlier state actions and arose from the same transactions. In dismissing *Buck* and *Dubuc*, the Sixth Circuit held that *res judicata* barred the subsequent federal claims because the plaintiffs could have brought their new federal claims in the earlier actions.

A review of *Fizer II* and the instant Complaint demonstrate that the present claims were viable during the pendency of *Fizer II* and both are based on the same facts: Plaintiff's December 23, 2012 arrest. [*See* Dkt. #1, Pg ID 3-4, ¶ 16; *Fizer II* Dkt. #4-2,

Pg ID 51, ¶ 3.] Thus, under *Buck* and *Dubuc*, Plaintiff's failure to bring his present claims in *Fizer II* bars the instant action pursuant to the doctrine of *res judicata*.

### III.  CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that, pursuant to the doctrine of *res judicata,* Plaintiff's claims in this action be, and hereby are DISMISSED in their entirety, with prejudice.

Let Judgment be entered accordingly.


                    s/Gerald E. Rosen
                    United States District Judge

Dated:  November 18, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 18, 2016, by electronic and/or ordinary mail.

                    s/Julie Owens
                    Case Manager, (313) 234-5135